IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TESSERON, LTD. | ) | CASE NO. 1:06 CV 2909 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| R.R. DONNELLEY & SONS COMPANY, | ) | |
| | ) | **MEMORANDUM AND ORDER** |
| Defendant. | ) | |

## I. Introduction

This matter comes before me for resolution of a discovery dispute between the plaintiff, Tesseron, Ltd., and the defendant, R.R. Donnelley & Sons Company, in a patent infringement case. The dispute presents the following issue:

> Tesseron seeks discovery of the Donnelley's systems not now identified or accused of infringement. Tesseron bases its request on an assumption that Donnelley cannot generate its end product without using an infringing system. Donnelley opposes this discovery as irrelevant to the claims presented and overly burdensome. Should the Court order discovery of unidentified and unaccused systems without further specification of the systems in question and of the components, characteristics, or elements allegedly causing infringement?

As explained below, although a party claiming patent infringement may obtain discovery of unidentified and unaccused systems under certain circumstances, it must identify those systems and the components, characteristics, or elements allegedly causing infringement with requisite specificity. Thus far Tesseron has not satisfied this specificity threshold. I will not, therefore, order the discovery Tesseron seeks at this time.

## II. Relevant Facts and Proceedings

**A.     Nature of the case and the course of proceedings**

In this patent infringement case Tesseron alleges that Donnelley has infringed certain method patents relating to variable data printing systems and services. District Judge Christopher Boyko has referred this case to me under 28 U.S.C. § 636(b)(1)(A) for the resolution of a discovery dispute.[1]

Tesseron brought the dispute to the Court's attention by a letter.[2] In that letter Tesseron complained that it had sought discovery of the variable data printing systems and services used by Donnelley but that Donnelley had refused to disclose anything about any system not identified by name.[3] Donnelley responded by letter, arguing that Tesseron's requests, as framed, are irrelevant to the claims asserted, overly broad, and unduly burdensome.[4] In that letter Donnelley made the general assertion that a patent infringement claimant cannot properly have discovery of products or systems unidentified and unaccused of infringement.[5]

---

[1] ECF # 43.

[2] ECF # 42.

[3] *Id.* at 1.

[4] ECF # 44.

[5] *Id.* at 1, 4-7.

After receipt of these letters, I conducted a telephonic conference with counsel.[6] Following the conference counsel submitted additional letters about the dispute[7] and made several *in camera* filings requested during the telephone conference.[8] The parties have agreed to a protective order,[9] which Judge Boyko has now entered.[10]

**B.     The discovery at issue**

The context of the dispute, as I understand it, is as follows. Donnelley is a printing company that specializes in large printing jobs such as magazines and catalogs. In its business Donnelley uses in various configurations computer software and hardware, the latter primarily printing equipment.

Tesseron is the current owner of certain method patents relating to variable data printing systems and services. Tesseron believes that the inventions covered by these patents have revolutionized the printing industry. It has sued Donnelley on the underlying assumption that Donnelley cannot generate the printing products it sells without using systems that infringe on one or more of Tesseron's patents. In the course of the litigation so far, Tesseron has specifically identified two systems that it alleges that Donnelley uses or has

---

[6] ECF # 46.

[7] ECF #s 49 (Donnelley) and 51 (Tesseron).

[8] ECF #s 53 (Tesseron), 55 (Donnelley), and 57 (Donnelley).

[9] ECF # 52.

[10] ECF # 54.

-3-

used that infringe - an EFI Fiery Controller and one of Donnelley's proprietary printing systems.

Tesseron believes that many if not all systems used in large-scale commercial printing infringe its patents and suspects that Donnelley is using infringing systems in addition to those that Tesseron has specifically identified. Tesseron has propounded to Donnelley discovery seeking disclosure of all the systems that Donnelley is using and has previously used. Donnelley has objected to this discovery as irrelevant and overly burdensome. Thus the dispute before me for resolution.

At the heart of the dispute is the terminology that Tesseron has used in defining the information it seeks. Tesseron has structured its request in terms of "variable data printing systems." It has defined "variable data printing systems" as:

> Variable Data Printing System: Shall refer to any system, as well as all component parts thereof, including software and source-code, capable by itself or in conjunction with a printing or imaging device, of producing or generating documents or images, or digital representations of documents or images, containing or utilizing some variable and/or personalized content at any stage of the production or generation.[11]

Donnelley objects to this request as a fishing expedition. It argues that the Court should only require discovery of those systems that Tesseron has specifically identified and accused on infringement. Further, Donnelley submits that this broad definition sweeps

---

[11] ECF # 46, Ex. K, Plaintiff's First Set of Interrogatories and Document Requests, Definition K at 4.

within its ambit a vast universe of technology far removed from anything Tesseron can credibly claim as infringing its patents.

In addressing Donnelley's argument that the Court should limit discovery to identified and accused systems, Tesseron has emphasized the dilemma it faces in trying to identify infringing systems without discovery of unaccused technology:

> Here, Plaintiff Tesseron, Ltd. ("Tesseron") is caught in the "Catch 22" that affects many plaintiffs who allege infringement of software or software-related activities. R.R. Donnelley refuses to produce information about products, systems, or processes that Tesseron cannot identify, and Tesseron cannot reverse engineer R.R. Donnelley's end products to determine the identity of R.R. Donnelley's infringing products. Indeed, R.R. Donnelley's end products are print jobs, and Tesseron has no way through analysis of the end product to determine the systems or processes by which they are generated. * * * In addition, Tesseron has specifically identified two infringing products. Thus, . . .Tesseron is not attempting to establish the first instance of infringement through discovery. Rather, Tesseron is attempting to identify further incidents of infringement, in particular, with respect to systems unavailable for inspection by the public.[12]

### III. Analysis

**A.     Introduction**

I will follow the approach taken by District Judge Leonard Davis of the Eastern District of Texas in *STMicroelectronics, Inc. v. Motorola, Inc.,*[13] a case discussed by both

---

[12] ECF # 48 at 2.

[13] *STMicroelectronics, Inc. v. Motorola, Inc.,* 308 F.Supp. 2d 754 (E.D. Tex. 2004).

parties,[14] and set out general discovery guidelines because of the complexity of the inventions at issue.[15]

The guidelines rest on two foundational principles for discovery in civil cases that emerge from Federal Rule of Civil Procedure 26(b). First, discovery must relate to matter, not privileged, that is relevant to a claim or defense.[16] Relevant information need not be admissible at trial but must be reasonably calculated to lead to the discovery of admissible evidence.[17] Second, the Court may limit discovery if the burden or expense outweighs its likely benefit, taking certain factors into consideration.[18]

**B.      The discovery of unidentified and unaccused systems generally**

As a general proposition, a party claiming patent infringement may obtain discovery of unidentified and unaccused systems or products under certain circumstances. Two of the cases cited by the parties lead me to this conclusion - *L.G. Philips LCD Ltd. Co. v. Tatung Co.*[19] and *IP Innovation, LLC v. Sharp Corp.*[20]

---

[14] ECF #s 48 at 1(Tesseron) and 51 at 2(Donnelley).

[15] *STMicroelectronics*, 308 F.Supp. 2d at 755.

[16] Fed. R. Civ. P. 26(b)(1).

[17] *Id.*

[18] Fed. R. Civ. P. 26(b)(2)(C).

[19] *L.G. Philips LCD Ltd. Co. v. Tatung Co.,* Misc. Nos. F-07-0009 and S-07-0018, 2007 WL 869700 (E.D. Cal. Mar. 21, 2007).

[20] *IP Innovation, LLC v. Sharp Corp*, 219 F.R.D. 427 (N.D. Ill. 2003).

In *LG Philips* the plaintiff, Philips, alleged that defendant Tatung had infringed its patents for mounting systems used in visual display products. It also alleged that Tatung had induced its customers, including Pelco, to infringe those patents. Philips sought discovery from Pelco both of products "accused" in the suit against Tatung and products "potentially" infringing.[21] Both Tatung and Pelco sought court orders limiting the discovery of Pelco to accused products. The magistrate judge in that case refused to limit discovery, concluding that under Civil Rule 26(b)(1) the discovery was relevant to Philips's claim that Tatung had induced third-parties to infringe Philips's patents.[22]

In *IP Innovation* the plaintiff claimed that certain model numbers of defendant Sharp's products infringed its patents. The parties agreed that Sharp would identify the chips used in those models. Sharp refused, however, to identify all models that incorporated those chips. The court ordered Sharp to identify the unaccused models that used the chips in question.[23] It ruled that such information was relevant to determining if additional Sharp products or systems infringed Innovation's patents.**[24]**

The question becomes, therefore, whether Tesseron's request in this case meets the standards necessary to permit discovery of unidentified and unaccused systems in a patent infringement case.

---

[21] *Philips*, 2007 WL 869700, at *2.

[22] *Id.*

[23] *IP Innovation*, 219 F.R.D. at 429.

[24] *Id.*

**C. Tesseron's request for discovery of unidentified and unaccused systems**

Although under the standards of Civil Rule 26(b)(1) discovery of unidentified and unaccused systems is theoretically possible, certain threshold requirements must be satisfied to permit such discovery to go forward. Specifically, the party seeking such discovery must first identify with requisite specificity the type of product or system at issue. Second, the party must also identify with specificity the component, characteristic, or element of the product or system that the claimants believes will render the product or system infringing.

Absent satisfaction of these threshold requirements, the discovery request will fail to be sufficiently relevant to a pending claim or defense[25] and the burden and expense of producing the discovery may well outweigh its likely benefit.[26]

The decision in *Caliper Technologies Corp. v. Molecular Devices Corp.*[27] illustrates this point. There the parties marketed competing versions of tests for enzymes that did not require expensive antibodies or radioactive materials. Plaintiff Caliper alleged that defendant Molecular's IMAP system infringed two of Caliper's patents. Caliper sought discovery of all of Molecular's assay systems that did not use antibodies or radioactive isotopes. Molecular resisted. The court refused to order the broader

---

[25] Fed. R. Civ. P. 26(b)(1).

[26] Fed. R. Civ. P. 26(b)(2)(C).

[27] *Caliper Technologies Corp. v. Molecular Devices Corp.*, 213 F.R.D. 555 (N.D. Cal. 2003).

-8-

discovery because Caliper did not identify with specificity any component, characteristic, or element of these other assay systems that would make them infringing.[28]

*Honeywell International Inc. v. Audiovox Communications Corp.*[29] also involved a request for unaccused and unidentified products. Plaintiff Honeywell claimed that various manufactures and end user had infringed its patents for liquid crystal display modules by incorporating them into cell phones. This decision was significantly driven by case management considerations. The court determined that the suit should proceed against the manufacturer defendants in the first instance.[30] As to the manufacturers, the court required Honeywell to specifically identify the accused products.[31] It imposed this requirement because Honeywell could purchase on the market the products that each manufacturer produced, tear them down, and specify the specific models that contained allegedly infringing modules.[32] This amounts to a determination by the court that given the factors set out in Civil Rule 26(b)(2)(C), the burden of identifying the accused products should rest with Honeywell in that particular case.

In *IP Innovations*, discussed above, the court permitted discovery of unaccused products where the parties agreed as to the identity of certain chips integral to the

---

[28] *Id.* at 558.

[29] *Honeywell International Inc. v. Audiovox Communications Corp.*, Nos. A. 04-1337, 04-1338, and 04-1536, 2005 WL 3988905 (D. Del. Oct. 7, 2005).

[30] *Id.* at *1.

[31] *Id.* at *1 n.2.

[32] *Id.*

infringement claim.[33]  Innovations sought and received discovery of model numbers of products, not then accused, that incorporated these chips.  There Innovations had sufficiently identified the components, characteristics, or elements of these other products that it claimed would make them infringing.

The opinion in *American Video Graphics L.P. v. Electronic Arts, Inc.*[34] is also instructive.  This decision involved compliance with a local rule requiring the filing of preliminary infringement contentions.  American claimed that approximately 800 of the defendants' games infringed its patents.  It provided, under the local rule, a description of how it believed these games infringed the patents.  It claimed that it could not be more specific without access to computer source codes, which the defendants claimed were confidential and proprietary.  The court acknowledged that "although defendants vigorously and rightly guard their source code,"[35] "software cases present unique challenges for the parties and the courts because, prior to discovery, plaintiffs usually only have access to the manifestation of the defendants' allegedly infringing source code and not the code itself."[36]  It observed that these problems can be overcome by discovery of the confidential and proprietary information under an appropriate protective order.[37]

---

[33] *IP Innovations*, 219 F.R.D. at 429.

[34] *American Video Graphics L.P. v. Electronic Arts, Inc.*, 359 F.Supp. 2d 558 (E.D. Tex. 2005).

[35] *Id.* at 560.

[36] *Id.*

[37] *Id.* at 561.

This is not a discovery dispute case.  It illustrates, however, that for a case such as this to go forward the party claiming infringement must specify not only the systems involved but also how those systems alleged infringe the patents-in-suit.

Here Tesseron seeks to discover unaccused and unidentified systems under the rubric of "variable data printing systems."  This encompasses a broad spectrum of technology and, as Donnelley points out, includes many systems that cannot conceivably infringe on any of Tesseron's patents.[38]  Although Tesseron is not necessarily limited to discovery of the two accused systems identified, it must narrow the scope of the systems to be targeted.

In the telephonic status conference and in filings since counsel have used the term "raster image processor" or "RIP" to describe the technology at issue.[39]  A RIP converts "data describing a printed page into a map of dots of ink actually comprising that page."[40]  To obtain some appreciation for the scope of the controversy, I ordered Tesseron to file *in camera* "a list of all suppliers of "RIPs" not proprietary to the defendant that the plaintiff contends may be infringing its patent."[41]  I also ordered Donnelley to file *in camera* "a list

---

[38] ECF # 46 at 8.

[39] *E.g.,* ECF #s 46 at 6 and 56 at 1-2.  Counsel have further clarified that this case involves only RIPs used to perform variable, as opposed to static, data printing.  ECF # 56 at 1.

[40] ECF # 46 at 6 n.5.

[41] ECF # 47.

of all suppliers whose "RIPs" are used by the defendant."[42] Counsel have complied. Without revealing the contents of those filings, and acknowledging only the most basic understanding of this technology, I conclude that the systems appropriate for discovery here can and should be more narrowly defined than by the term "variable data printing system."[43]

Further, as presently postured, this case is analogous to *Caliper*,[44] discussed above, in that Tesseron seeks sweeping discovery of all of the systems used by Donnelley on the assumption that Donnelley cannot produce what it does without technology infringing on Tesseron's patents. That is not sufficient. Tesseron must specificity the component, characteristic, or element of the system that must, in its view, exist for infringement to occur, as the plaintiffs did in *IP Innovation*[45] and *American Video*.[46]

Finally the parties dispute whether discovery should be permitted for the time period beyond the statute of limitations. Tesseron cites this Court's decision in *Zatco v. Rogers Manufacturing Co., Inc.*[47] *Zatko* contains the statement that activities prior to the

---

[42] *Id.*

[43] One possible approach is for Tesseron to disclose to Donnelley all RIPs that it contends may infringe its patents and for Donnelley to then disclose all such RIPs that it is using or has used. The parties have already assembled that information for purposes of the *in camera* filings with the Court.

[44] *Caliper*, 213 F.R.D. 555.

[45] *IP Innovation*, 219 F.R.D. 427.

[46] *American Video*, 359 F.Supp. 2d 558.

[47] *Zatco v. Rogers Manufacturing Co., Inc.*, 37 F.R.D. 29 (N.D. Ohio 1964).

six-year statute of limitations period may have an effect on the period not barred by the statute.[48] This is not a *carte blanc* to conduct discovery into activities during the time-barred period. Tesseron must more specifically identify the activities inquired about to show their relevance to the claims not time barred

     As Tesseron's discovery requests are currently framed, Donnelley need not further respond to them. Donnelley, however, may not avoid discovery, propounded consistent with the guidance set out in this decision, regarding unidentified and unaccused systems it uses .

## IV. Conclusion

     The parties are ordered to proceed with discovery in accordance with the guidelines set forth in this memorandum and order.

     IT IS SO ORDERED.

Dated: July 10, 2007                                                               s/ William H. Baughman, Jr.
                                                                                 United States Magistrate Judge

---

[48] *Id.* at 32.